UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA L., | Case No.  2:20-cv-01493-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## I.

## **INTRODUCTION**

On February 14, 2020, plaintiff Dora L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents five disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered plaintiff's testimony; (2) whether the ALJ properly considered the opinion of treating physician Dr. Jacob

Rabinovich; (3) whether the ALJ properly considered the opinion of examining physician Dr. Donald Kim; (4) whether the ALJ properly considered the opinion of the non-examining medical expert Dr. Eric Schmitter; and (5) whether the ALJ failed to consider a composite job.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-21; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-20.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony and the medical opinions of Dr. Rabinovich, Dr. Kim, and Dr. Schmitter.  The court also finds that the ALJ did not err in concluding that plaintiff's past relevant work as a freezer operator was not a composite job for purposes of the step four analysis. The court therefore affirms the decision of the Commissioner denying DIB.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 52 years old on the alleged disability onset date, has a tenth grade education.  *See* AR at 88, 103.  Plaintiff has past relevant work as a freezer operator, hand packager or production packer, and ice cream freezer assistant.  *See* AR at 89-90.

On August 29, 2016, plaintiff filed an application for a period of disability and DIB, alleging an onset date of August 31, 2012 due to pain in her neck, back, left knee, and left shoulder, carpal tunnel in her left hand, and post-stroke impairment.  *See* AR at 103-04.  Plaintiff's application was initially denied on March 13, 2017.  *See* AR at 122.

Plaintiff requested a hearing, which the assigned ALJ held on January 15, 2019.  AR at 47.  Plaintiff, represented by counsel, appeared and testified at the hearing.  AR at 49, 76-89, 96.  The ALJ also heard testimony from Dr. Eric

2

1   Schmitter, a medical expert, and Aida Worthington, a vocational expert.  *See* AR at
2   51-75, 89-101.  The ALJ denied plaintiff's claim for benefits on February 20,
3   2019.  AR at 29-40.

4          Applying the well-established five-step sequential evaluation process, the
5   ALJ found, at step one, that plaintiff engaged in substantial gainful activity from
6   June 2, 2013 to August 31, 2013, after the alleged onset date, but there was at least
7   a 12-month period where plaintiff was not earning above the substantial gainful
8   activity level.  AR at 31-32.

9          At step two, the ALJ found that plaintiff suffered from the severe
10  impairments of left shoulder tendinitis, left knee medial meniscal tear, lumbar
11  degenerative disc disease, cervical spine degenerative disc disease, obesity, and
12  carpal tunnel syndrome of the left upper extremity.  AR at 32.

13         At step three, the ALJ found that plaintiff's impairments, whether
14  individually or in combination, did not meet or medically equal one of the
15  impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

16         The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and
17  determined she had the ability to perform medium work with the following
18  limitations:

19         can lift, carry, push, or pull up to 50 pounds occasionally and 25
20         pounds frequently, however, the individual's lifting, carrying,
21         pushing, and pulling overhead with the left (non-dominant) upper
22         extremity would be limited to 20 pounds occasionally and 10 pounds

23

24         [1]   Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26  56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the
    five-step evaluation, the ALJ must proceed to an intermediate step in which the
27  ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
28  F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

frequently; can stand or walk for six hours out of an eight-hour day; no limitations as to sitting; can frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance and stoop, and occasionally kneel, crouch, and crawl; can occasionally reach above shoulder level with the left (non-dominant) upper extremity; and can occasionally finger and feel with the left (non-dominant) upper extremity.

AR at 33.

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as a freezer operator as generally performed, and that plaintiff did not have a composite job. AR at 39. The ALJ accordingly concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 31, 2012, the alleged onset date, through March 31, 2016, the date last insured ("DLI"). AR at 40.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on January 16, 2020. AR at 1. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

4

1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks omitted). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks omitted).

## IV.

## DISCUSSION

## A.   The ALJ Properly Evaluated the Medical Opinions

Plaintiff argues the ALJ improperly rejected the opinions of treating physician Dr. Rabinovich and examining physician Dr. Kim, and instead wrongly gave significant weight to the opinion of the medical expert, Dr. Schmitter.

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-

---

[2]   The SSA issued new regulations effective March 27, 2017. All regulations cited in this section are effective for cases filed prior to March 27, 2017. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b).

examining physicians.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Id.*  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, in rejecting the contradicted opinions of examining physicians.  *Lester*, 81 F.3d at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

### 1.   **Dr. Rabinovich**

Dr. Rabinovich began treating plaintiff on August 29, 2016, after the DLI of March 31, 2016.  *See* AR at 772.  Dr. Rabinovich issued two opinions on plaintiff's limitations, the first one on December 5, 2016 (AR at 526) and the second on August 21, 2017 (AR at 816-28).  The ALJ addressed only the 2016 opinion in her decision.  *See* AR at 38.  In that 2016 opinion, Dr. Rabinovich determined that plaintiff should be limited to, among other things: (1) lifting or carrying a

1    maximum of ten pounds; (2) occasional reaching with her left hand; (3) standing

2    and walking four hours total out of an eight-hour workday; and (4) about three

3    days off work every month due to her impairments or treatment.  *See* AR at 526.

4          The ALJ rejected Dr. Rabinovich's opinion in favor of Dr. Schmitter's

5    contrary opinion that plaintiff could: (1) push, pull, or lift up to 50 pounds

6    occasionally and 25 pounds frequently; (2) stand and walk for six hours out of an

7    eight-hour workday; and (3) no indication of days off work due to impairments or

8    treatment.  *See* AR at 33, 55-56.  Because Dr. Schmitter is a non-examining source,

9    the ALJ must have provided specific and legitimate reasons, backed by substantial

10   evidence, to reject Dr. Rabinovich's contradicted opinion.  *See Lester*, 81 F.3d at

11   830-31.

12         As an initial matter, plaintiff appears to treat the two separate opinions from

13   2016 and 2017 as Dr. Rabinovich's single, seamless opinion.  That is not proper in

14   this case given the length of time between the opinions and the fact that, as

15   discussed below, each opinion raises its own temporal concerns due to their

16   remoteness to the DLI.

17         To the extent plaintiff argues the ALJ erred in failing to discuss the 2017

18   opinion, that argument fails.  Dr. Rabinovich signed the opinion on August 21,

19   2017, more than seventeen months after the DLI.  Thus, the opinion was not

20   probative evidence of plaintiff's limitations during the relevant period from August

21   31, 2012 to March 31, 2016.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006,

22   1012 (9th Cir. 2003) (ALJs do not have discuss evidence that is neither significant

23   nor probative); *Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (ALJ

24   properly disregarded opinion that was based on examination from one and one half

25   years after the expiration of plaintiff's insured status); *see also Wallace v.*

26   *Berryhill*, 2017 WL 3835169, at *3 (C.D. Cal. Aug. 31, 2017) ("[A]n ALJ may

27   entirely 'disregard' a medical opinion rendered so far after the LDI that it is

28

                                            7

1   'reasonably' considered too 'remote[]' to have probative value." (quoting

2   *Lombardo*, 749 F.2d at 567)); *Chavolla v. Colvin*, 2014 WL 953422, at *2 (C.D.

3   Cal. Mar. 11, 2014) ("Dr. Lane's opinions from July and September 2009 were not

4   probative evidence of plaintiff's limitations during the earlier, relevant period of

5   June 27, 2007[] to May 20, 2009.").

6       Moving on to the ALJ's analysis, the ALJ provided four reasons for giving

7   little weight to Dr. Rabinovich's 2016 opinion.  AR at 38.  First, the ALJ found

8   that the opinion was inconsistent with the medical record as a whole, which

9   showed normal and mild clinical findings prior to the DLI.  *Id.*  The ALJ provided

10  multiple examples of normal medical findings in the section of her decision dealing

11  with plaintiff's RFC.

12      There are normal exam findings as early as June 14, 2012, particularly

13  concerning sensation and reflexes.  *See* AR at 34, 358.  On August 10, 2012, an

14  electrodiagnostic study of plaintiff's lower extremities came back normal.  *See* AR

15  at 35, 346-48.  Other medical exams from mid-2012 to early 2013 showed no

16  reports of weakness, decreased sensation, decreased reflexes, or difficulty walking.

17  *See* AR at 35, 480-98.

18      On August 1, 2014, an examination by Dr. Kim revealed certain normal

19  exam findings, including normal strength, sensation, and reflexes of the upper and

20  lower extremities, a negative straight leg raise test, and normal gait.  *See* AR at 35,

21  391-95.

22      On February 28, 2015, in preparation for her shoulder surgery, plaintiff

23  exhibited otherwise normal neurological findings regarding motor strength,

24  sensation, and reflexes.  *See* AR at 35, 363-67.  After her surgery, plaintiff reported

25  her neck and shoulder pain had improved, and exhibited good range of motion in

26  her left knee.  *See* AR at 35-36, 376, 445.  On May 4, 2015, a medical examination

27  revealed full and symmetric muscle strength and normal muscle tone without any

28

8

1   atrophy or abnormal movements.  *See* AR at 35, 869.  Although an MRI of the left

2   shoulder from November 13, 2015 shows moderate osteoarthritis in the

3   acromioclavicular joint ("AC joint"), there was no evidence of labral tear and only

4   mild tendinosis of the subscapularis, supraspinatus, and infraspinatus.  *See* AR at

5   36, 409-10.  Other medical exams from 2015 revealed no reports of positive

6   neurological findings or difficulty walking.  *See* AR at 35, 429-35, 441-42, 867,

7   872.

8        Further exams from January 21, 2016 showed no positive neurological

9   findings or difficulty walking.  *See* AR at 35, 425-28, 875.  On January 26, 2016,

10  an MRI of plaintiff's cervical spine came back normal, except for mild right

11  uncovertebral osteophytosis and anteriorly bulging disc without significant

12  narrowing at C5-6, and mild anteriorly and posteriorly bulging disc with minimal

13  effacement of the ventral CSF at C6-7.  *See* AR at 36, 403-04.  On March 15, 2016,

14  plaintiff reported that medication helped control her pain, bringing it down from an

15  eight out of ten to two to four out of ten.  *See* AR at 36, 425.  This allowed her to

16  perform activities of daily living.  *See id.*

17       Finally, there are multiple normal exam findings, including neurological and

18  gait-related, from after the DLI.  *See* AR 36-37, 652, 877, 879-80, 882, 884-85,

19  887, 890-91, 898-99, 903-04.  Some of those examinations occurred as late as

20  2018.  *See* AR at 37, 898-99, 903-04.

21       When the opinion of a treating physician is contradicted by another doctor,

22  the ALJ must provide specific and legitimate reasons, supported by substantial

23  evidence, to reject the opinion.  *See Smolen*, 80 F.3d at 1285.  The ALJ can do this

24  by "setting out a detailed and thorough summary of the facts and conflicting

25  clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*,

26  157 F.3d at 725 (citation omitted).

27       Here, the ALJ adopted the testifying medical expert's opinion instead of Dr.

28

9

Rabinovich's, specifically with respect to lifting, carrying, standing, walking, and absenteeism. *See* AR at 33. In doing so, the ALJ adequately summarized the medical evidence she believed to be inconsistent with Dr. Rabinovich's opinion. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJs may discredit a treating opinion that is unsupported by the record as a whole or by objective medical findings). She combed through tens of medical records, many of which she ultimately interpreted as showing normal or mild clinical findings. *See Harrington v. Saul*, __ Fed. Appx. __, 2021 WL 2433571, at *1 (9th Cir. 2021) (accepting reason that physician's opinion was inconsistent with the record, which documented "intact or nearly intact functioning").

Plaintiff argues the ALJ failed to address the particular aspects of Dr. Rabinovich's opinion regarding standing, walking, reaching, and absenteeism that support plaintiff's disability. *See* P. Mem. at 9-10. But, as previously summarized, the ALJ gave an extensive list of examples of normal or mild clinical findings that were inconsistent with Dr. Rabinovich's opined limitations, including those related to standing, walking, reaching, and absenteeism. The ALJ's explanation was not boilerplate as plaintiff argues. The law does not require "magic words" or "incantations" to reject the opinions of treating physicians. *See Magallanes*, 881 F.2d at 755. Accordingly, this reason was specific, legitimate, and backed by substantial evidence.

Second, the ALJ rejected Dr. Rabinovich's opinion for failing to cite any medical findings, such as imaging, range of motion assessments, antalgic gait, or other exam findings. AR at 38. The form that Dr. Rabinovich used to document his 2016 opinion includes fields for him to explain the medical findings supporting his assessments. *See* AR at 526. But he left most of those fields blank, providing a basis only for his opinion on sitting, standing, and walking limitations. *See id.* He stated that his assessment on those abilities was based on "pain on [left] shoulder,

1   neck and back pain, tenderness (based on medical examination)." *See id.*

2   "[A]n ALJ may discredit treating physicians' opinions that are conclusory,

3   brief, and unsupported by the record as a whole . . . or by objective medical

4   findings." *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations

5   omitted). Plaintiff's subjective symptom complaints to Dr. Rabinovich are not the

6   type of clinical findings sufficient to support an opinion. *See id.* (finding that ALJ

7   properly discounted treating physician's opinion that lacked supportive objective

8   evidence and was based on plaintiff's subjective descriptions of pain). Thus, the

9   ALJ did not err in concluding that Dr. Rabinovich failed to support his 2016

10   opinion with medical findings.

11   Plaintiff argues that Dr. Rabinovich's comprehensive report accompanying

12   his 2017 opinion provides medical findings in support of his 2016 opinion. *See* P.

13   Mem. at 10. She contends the ALJ must consider all of the objective evidence that

14   Dr. Rabinovich utilized to form his opinion. *See id.* at 11. But the court already

15   found that plaintiff's effort to consolidate the 2016 and 2017 opinions was

16   improper. And, for obvious reasons, Dr. Rabinovich could not have considered

17   those 2017 medical findings in formulating his 2016 opinion. Accordingly,

18   plaintiff's argument is not persuasive.

19   The ALJ's third reason for rejecting Dr. Rabinovich's opinion was that he

20   appeared not to be familiar with the SSA's precise disability guidelines. AR at 38.

21   The ALJ based her conclusion on Dr. Rabinovich's failure to include the frequency

22   for his opinion on lifting and carrying limitations or any discussion of postural

23   limitations. *See id.*

24   The ALJ did not err in discounting Dr. Rabinovich's opinion regarding

25   lifting and carrying given the clear omission of frequency qualifications. *See* 20

26   C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (ALJs may consider familiarity with the

27   Administration's "disability programs and their evidentiary requirements" when

28

11

1    evaluating a medical opinion).  As plaintiff notes, Dr. Rabinovich did discuss

2    frequency in his later opinion, but the court will not treat the two opinions as one

3    for the reasons previously provided.  On the other hand, there is no requirement in

4    the regulations that opinion sources opine on every potential limitation to be

5    considered by the Administration, so that is not a legitimate reason to discredit an

6    entire opinion.  The ALJ's reason is also not applicable to the other limitations in

7    the opinion that did include frequency qualifications, such as sitting, standing,

8    walking.  *See* AR at 526; *cf. Gutierrez v. Comm'r*, 2016 WL 1305096, at *2 (C.D.

9    Cal. Apr. 1, 2016) ("[E]ven total ignorance of the law would have no logical

10   impact on the validity of Dr. Minkus'[s] opinions regarding Plaintiff's functional

11   abilities, such as Plaintiff's tolerances for sitting, standing and walking." (citations

12   omitted)).  Thus, this reason for discounting Dr. Rabinovich's opinion is only

13   partially legitimate and supported by substantial evidence.

14        The fourth and final reason given by the ALJ was that the opinion was

15   issued eight months after the DLI, does not identify the time period to which the

16   assessments apply, and Dr. Rabinovich did not start treating plaintiff until months

17   after the DLI.  *See* AR at 38.  Unless an opinion is too remote from the DLI to be

18   probative, ALJs must consider medical opinions made after the DLI that evaluate a

19   "preexpiration condition."  *See Lester*, 81 F.3d at 832 (internal quotation marks

20   omitted); *Lombardo*, 749 F.2d at 567.  But remoteness from the DLI can be a

21   proper reason to give an opinion less weight, especially if the source of the opinion

22   did not examine the plaintiff prior to the DLI.  *See Lombardo*, 749 F.3d at 567

23   (rejecting opinion of psychiatrist who examined plaintiff after the DLI); *Chavolla*,

24   2014 WL 953422, at *2 (same); *Mitchell v. Astrue*, 2008 WL 486014, at *11 (E.D.

25   Cal. Feb. 15, 2008) (ALJ did not err in giving less weight to opinions from January

26   and April of 2004 where plaintiff's DLI was March 31, 2003).  On the other hand,

27   the court agrees with plaintiff that the ALJ erred in failing to supplement the record

28

1    regarding the extent to which Dr. Rabinovich's 2016 opinion applied prior to the

2    DLI.  *See Smolen*, 80 F.3d at 1288 (ALJs have a duty to conduct an appropriate

3    inquiry and augment the record if necessary).  But that error is harmless because

4    the ALJ supported her evaluation with other substantial evidence as discussed.

5    Accordingly, this reason for discounting Dr. Rabinovich's opinion was also proper.

6            Plaintiff raises other arguments aside from directly challenging the ALJ's

7    four reasons for discounting Dr. Rabinovich's opinion.  First, the court rejects

8    plaintiff's argument that the ALJ did not sufficiently consider Dr. Rabinovich's

9    status as a board-certified orthopedic surgeon and plaintiff's treating physician.

10   *See* P. Mem. at 8.  Contrary to plaintiff's argument, the ALJ did not have to

11   expressly address each of the factors outlined in 20 C.F.R. § 404.1527(c) in her

12   decision.  *See Kelly v. Berryhill*, 732 Fed. Appx. 558, 562 n.4 (9th Cir. May 1,

13   2018).  It is enough that the ALJ gives some indication that the factors were

14   properly considered.  *See id.*  Here, the court is satisfied the ALJ properly

15   considered all of the relevant factors given that she expressly discussed treatment

16   relationship, supportability, consistency, and familiarity with the SSA's guidelines.

17   Plaintiff's argument also fails because Dr. Schmitter, whose opinion the ALJ

18   adopted instead of Dr. Rabinovich's, is also a board-certified orthopedic surgeon.

19   *See* AR at 914-15.

20           Second, plaintiff's argument that the ALJ should have addressed Dr.

21   Rabinovich's treatment notes is too conclusory to be persuasive.  *See* P. Mem. at 8.

22   Only some of those notes predate the 2016 opinion (*see* AR at 787-808), which is

23   the only one of Dr. Rabinovich's opinions that the ALJ found to be of some

24   probative value in this case.  And it is unclear whether Dr. Rabinovich even relied

25   on those treatment notes to formulate his 2016 opinion.  *See* AR at 526 (basing his

26   opinion on plaintiff's subjective pain statements made during an unidentified

27   "medical examination").  Plaintiff also fails to explain how the information in

28

1    those notes supports her arguments.  *See Williams v. Berryhill*, 728 Fed. Appx.

2    709, 711 (9th Cir. 2018) ("We require contentions to be accompanied by reasons."

3    (internal quotation marks omitted)).

4         Finally, plaintiff argues the ALJ erred in rejecting Dr. Rabinovich's opinion

5    in favor of the medical expert's.  *See* P. Mem. at 13.  The court addresses that

6    argument in the section on Dr. Schmitter's opinion.

7         For all of these reasons, the court concludes the ALJ properly considered

8    and discounted Dr. Rabinovich's 2016 opinion.

9         **2.    <u>Dr. Kim</u>**

10        Dr. Kim conducted a neutral Qualified Medical Evaluation as part of

11   plaintiff's workers' compensation claim.  P. Mem. at 14; AR at 387-402.  He

12   issued his opinion after conducting a physical examination of plaintiff on August 1,

13   2014, and reviewing her medical records.  *Id.*  Among other things, Dr. Kim

14   opined that plaintiff "would be restricted from pushing, pulling or lifting greater

15   than 10 pounds."  AR at 396.

16        The ALJ rejected Dr. Kim's opinion on pushing, pulling, and lifting and

17   adopted Dr. Schmitter's contrary opinion that plaintiff could push, pull, or lift up to

18   fifty pounds occasionally and twenty-five pounds frequently.  *See* AR at 33, 55-56.

19   Because Dr. Schmitter is a non-examining source, the ALJ must have provided

20   specific and legitimate reasons, backed by substantial evidence, to reject Dr. Kim's

21   contradicted opinion.  *See Lester*, 81 F.3d at 830-31.

22        The ALJ gave Dr. Kim's opinion little weight for two reasons.  First, the

23   ALJ found that, "as evidenced by the opinion[s], [Dr. Kim is] not familiar with the

24   Social Security Administration's precise disability guidelines."  AR at 38.  Second,

25   the ALJ concluded that Dr. Kim's opinion was not consistent with the medical

26   evidence as a whole, which shows many normal exam findings.  AR at 39.

27        The ALJ's first reason is only partly legitimate.  As previously discussed,

28

14

1    ALJs may consider a physician's familiarity with the SSA's guidelines.  20 C.F.R.

2    §§ 404.1527(c)(6), 416.927(c)(6).  The ALJ here essentially inferred that Dr. Kim

3    was unfamiliar with the guidelines given his opinion's omission of frequency or

4    certain other limitations.  *See* AR at 38-39.  This is fair.  But familiarity with the

5    guidelines is not necessary to opine that an individual cannot push, pull, or lift

6    more than ten pounds.  *See, e.g.*, *Gutierrez*, 2016 WL 1305096, at *2 ("[E]ven total

7    ignorance of the law would have no logical impact on the validity of Dr.

8    Minkus'[s] opinions regarding Plaintiff's functional abilities, such as Plaintiff's

9    tolerances for sitting, standing and walking." (citations omitted)).

10          Defendant's caselaw to the contrary is distinguishable because it concerns

11   final determinations of disability or blindness, which are terms of art that have

12   different requirements for purposes of social security and workers' compensation.

13   *See* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency

14   or a nongovernmental entity about whether you are disabled, blind, employable, or

15   entitled to any benefits is based on its rules, it is not binding on us . . . .").

16   Adopting a state agency's disability determination is not the same as adopting a

17   state agency physician's opinion on limitations; in fact, the regulations require

18   ALJs to consider those opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)

19   ("Regardless of its source, we will evaluate every medical opinion we receive.").

20          The ALJ's second reason to discount Dr. Kim's opinion, by contrast, is

21   specific, legitimate, and backed by substantial evidence.  The ALJ recognized that

22   the medical record contained evidence of severe impairments.  AR at 39.  But there

23   are also multiple examples of normal medical findings, which the court previously

24   outlined.

25          Of relevance to the part of Dr. Kim's opinion concerning pushing, pulling,

26   and lifting, plaintiff did not report any weakness or difficulty walking during

27   several medical examinations in late 2012 and early 2013.  *See* AR at 35, 471-98.

28

15

There were also normal exam findings and no reports of positive neurological findings or any difficulty walking during examinations in 2015 and early 2016. *See* AR at 35-36, 363-67, 425-42, 867, 869, 872, 875.  For example, on May 4, 2015, plaintiff exhibited full and symmetric muscle strength and normal muscle tone without any atrophy or abnormal movements.  AR at 869.  Plaintiff also reported improvement in her neck and left shoulder following surgery, including less pain and more movement.  *See* AR at 35-36, 376, 445.  In late 2016, plaintiff exhibited normal range of motion, no obvious muscoskeletal deformity, and no neurological deficits.  *See* AR at 36, 652.  There were also many normal findings, including neurological and regarding gait in 2017 and 2018.  *See* AR at 37, 887, 890-91, 898-99, 903-04.

Defendant also notes that Dr. Kim's own findings appear to contradict his opinion.  *See* D. Mem. at 17-18.  Indeed, the ALJ noted that Dr. Kim's evaluation revealed "many normal exam findings, including normal strength, sensation and reflexes of the upper and lower extremities, a negative straight leg raise, and normal gait."  *See* AR at 35, 391-95; *Santiago v. Saul*, 777 Fed. Appx. 237, 238 (9th Cir. 2019) (affirming rejection of limitations on lifting capacity where plaintiff "had tenderness, reduced range of motion, and reduced grip strength, but she also had a negative straight-leg raise test, no muscle spasms, normal motor strength, normal sensation, normal reflexes, and no signs of radiculopathy").

In short, the ALJ provided one specific and legitimate reason, backed by substantial evidence, to discount Dr. Kim's contradicted opinion.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between opinion and plaintiff's medical records provides specific and legitimate reason to reject opinion).  Accordingly, the court finds no error in the ALJ's evaluation of the opinion.

1

### 3.   <u>Dr. Schmitter</u>

2      Dr. Schmitter was the medical expert who testified at the hearing.  The ALJ

3  summarized Dr. Schmitter's opinion on plaintiff's limitations as follows: lifting,

4  carrying, pushing, or pulling 50 pounds occasionally and 25 pounds frequently;

5  standing or walking six hours out of an eight-hour day; no limits on sitting;

6  occasional, light lifting or carrying in the overhead position with the upper left

7  extremity; no limitations on climbing ramps or stairs; occasional bending,

8  crawling, and stooping; and occasional manipulation, including fine touch and

9  feeling, with the upper left extremity.  *See* AR at 37.  The ALJ gave significant

10  weight to Dr. Schmitter's opinion and formulated plaintiff's RFC based on it.  *See*

11  AR at 33, 38.

12      The ALJ stated she gave significant weight to Dr. Schmitter's opinion

13  because he is impartial, had reviewed plaintiff's medical records, is board certified

14  in orthopedic surgery, is familiar with the Social Security Administration's precise

15  disability guidelines, and his opinion is consistent with the medical record as a

16  whole.  AR at 38.  The ALJ highlighted this last reason – consistency with the

17  medical record – as the most important.  *Id.*  Plaintiff disputes this consistency.

18      Plaintiff first argues that Dr. Schmitter found no hand impairment and no

19  significant pathology in the lumbar spine until challenged on these points by

20  counsel.  P. Mem. at 16.  It is true that Dr. Schmitter initially omitted plaintiff's

21  carpal tunnel syndrome from his opinion, but he ultimately testified that it would

22  impair manipulation and fine touch on an occasional basis.  *See* AR at 56, 58-59.

23  As for plaintiff's lumbar spine, Dr. Schmitter testified that the moderate decrease

24  in the anteroposterior sagittal diameter of the lumbosacral spine was due to normal

25  deterioration and did not amount to anything.  *See* AR at 63.  Plaintiff argues that

26  because the decrease was moderate, Dr. Schmitter's finding that there was no

27  significant pathology in the lumbar spine is erroneous.  *See* P. Mem. at 16.  But

28

1    plaintiff's assertion is not supported by any citation to medical evidence, and is

2    thus insufficient to challenge Dr. Schmitter's expert opinion on that specific issue.

3    *See Toni L. v. Kijakazi*, 2021 WL 3891066, at *8 (E.D. Wash. Aug. 31, 2021)

4    (finding that plaintiff "failed to tie the evidence to the arguments" by failing to cite

5    to the medical records).

6         Plaintiff also challenges Dr. Schmitter's opinion with respect to her left

7    shoulder.  The court recognizes that Dr. Schmitter's discussion of the AC joint

8    separation issue was disorganized.  Dr. Schmitter opined that plaintiff's shoulder

9    separation, identified for the first time in an August 19, 2016 MRI, could reflect an

10   old injury but that it ultimately did not affect his opinion on plaintiff's limitations.

11   *See* AR at 37, 65.  Initially, Dr. Schmitter explained that although shoulder

12   separation of 12 millimeters was significant, he saw no evidence of pain in the

13   record.  *See* AR at 63-64.  But as plaintiff's counsel noted, there is evidence that

14   plaintiff was suffering from increasing pain in her left shoulder at least as of April

15   6, 2016.  *See* AR at 65-66, 519 ("The left shoulder is very symptomatic with

16   painful arc.").  And Dr. Schmitter testified that generalized shoulder pain could be

17   due to injury to the AC joint.  *See* AR at 65-67.

18        Although Dr. Schmitter eventually conceded that there was indeed evidence

19   that plaintiff had shoulder pain, he refused to amend his opinion on limitations for

20   several other reasons.  He explained that the arthroscopic procedure plaintiff had

21   on March 21, 2015 "didn't find very much," such as tears in her rotator cuff or

22   labrum.  *See* AR at 66-67.  He confirmed plaintiff suffered from tendonitis but

23   explained that his opinion on limitations already accounted for that.  *See* AR at 67.

24   In addition, although Dr. Schmitter did not mention this in his testimony, the ALJ

25   pointed to another MRI report, dated November 13, 2015, that omitted any

26   mention of a separation.  *See* AR at 37 (citing AR at 409, 878).  Dr. Schmitter's

27   opinion regarding medium limitations related to plaintiff's shoulder is consistent

28

1   with the pieces of evidence that he and the ALJ identified.  *See* AR at 38 (finding

2   Dr. Schmitter's opinion "consistent with the medical record as a whole,

3   particularly as it pertains to the claimant's impairments prior to the DLI"); *Thomas*

4   *v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or

5   non-examining physicians may also serve as substantial evidence when the

6   opinions are consistent with independent clinical findings or other evidence in the

7   record." (citations omitted)).

8        Next, the ALJ did not err in concluding that Dr. Schmitter's opinion

9   regarding plaintiff's left knee problems was consistent with the evidence.  Dr.

10  Schmitter noted she had full range of motion but showed consistent symptoms of a

11  modest degree due to a knee tear, crepitation in the patella and trochlear groove of

12  the femur, and chondromalacia.  *See* AR at 53, 56, 58, 70.  He testified that the

13  knee tear was degenerative, very common at plaintiff's age of 59 years old, and

14  usually not very severe.  *See* AR at 53-54, 72.  He referred to the tear as a minor

15  problem "of not great importance," that does not usually require surgery.  AR at

16  54-55, 72.  He testified that the crepitation and chondromalacia were also very

17  common.  AR at 70.  Taking all of these issues and their severity into account, he

18  opined that plaintiff would have occasional limitations in her ability to crawl,

19  stoop, bend, and kneel.  *See* AR at 58.

20       Plaintiff argues Dr. Schmitter's opinion is not consistent with the medical

21  evidence because it contradicts the opinions of Dr. Kim and Dr. Ahmed.  *See* P.

22  Mem. at 17.  But the ALJ gave little weight to those opinions.  *See* AR at 38.

23  Plaintiff does not dispute the ALJ's decision as to Dr. Ahmed's opinion.  *See*

24  *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not

25  address this finding because [plaintiff] failed to argue this issue with any

26  specificity in his briefing.").  And the court already affirmed the ALJ's rejection of

27  Dr. Kim's opinion concerning pushing, pulling, and lifting.

28

1    Plaintiff also argues the ALJ's finding that her left knee medial meniscal tear

2    was a severe impairment was inconsistent with the significant weight given to Dr.

3    Schmitter's opinion.  *See* P. Mem. at 18.  But her argument relies on a flawed

4    definition of "severe" that gives the term more importance that it deserves at step

5    two.  An ALJ's finding that an impairment is severe at step two means only that it

6    has more than a minimal effect on the claimant's ability to perform basic work

7    activities.  *See* AR at 32; *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal.

8    2008) ("The Step Two inquiry is a 'de minimis screening device to dispose of

9    groundless claims.'" (quoting *Smolen*, 80 F.3d at 1290)).  Thus, the ALJ's de

10   minimis finding that plaintiff's knee impairment was severe at step two is not

11   necessarily inconsistent with Dr. Schmitter's opinion that plaintiff's ailments are

12   modest and require only occasional limitations.

13   Finally, plaintiff complains that the ALJ erred in giving greater weight to Dr.

14   Schmitter's opinion than Dr. Rabinovich's.  Plaintiff notes Dr. Schmitter testified

15   that Dr. Rabinovich's 2016 opinion could be reasonable and the differences

16   between their opinions came down to a judgment call.  *See* P. Mem. at 13-14; AR

17   at 37.  Under those circumstances, plaintiff argues the ALJ should not have given

18   more weight to Dr. Schmitter's opinion.  *See* P. Mem. at 13-14.

19   Plaintiff's argument fails for several reasons.  First, it ignores that the ALJ

20   identified four other reasons for discounting Dr. Rabinovich's opinion, separate

21   from any conflict with Dr. Schmitter's opinion.  Second, as defendant notes, Dr.

22   Schmitter made that comment in response to a question on whether, considering

23   other evidence identified by plaintiff's counsel, Dr. Rabinovich's opinion would be

24   reasonable.  *See* AR at 74.  Most of that "other evidence," however, post-dated the

25   DLI.  *See* AR at 63 (referring to AR at 521), 65 (referring to AR at 519), 69

26   (referring to AR at 754), 71 (referring to AR at 809).  Thus, it is unclear whether

27   Dr. Schmitter would have agreed that the 2016 opinion was reasonable if applied

28

1    retroactively.  Third, the court is not persuaded that Dr. Schmitter's comment was

2    all that extraordinary in the context of difficult medical opinions concerning

3    evolving, chronic illnesses.  *See London v. Colvin*, 2014 WL 12557986, at *6

4    (C.D. Cal. Dec. 29, 2014) (ALJ did not err in rejecting examining opinion in favor

5    of medical expert's opinion despite expert's testimony that at least part of the

6    dispute boiled down to a judgment call); *Santoro v. Astrue*, 2012 WL 6853328, at

7    *7-9 (W.D. Wash. Dec. 12, 2012) (although medical consultant stated his

8    disagreement with the examining doctor was a judgment call, "it is solely the

9    province of the ALJ to resolve conflicts in the medical evidence").

10        For these reasons, the court finds the ALJ did not err in giving significant

11   weight to Dr. Schmitter's opinion.

12   **B.    The ALJ Properly Evaluated Plaintiff's Testimony**

13        Plaintiff argues the ALJ erred in considering her testimony regarding pain

14   and symptoms.  Plaintiff contends the only reason the ALJ gave for rejecting her

15   allegations was lack of supporting medical evidence, and this reason is legally

16   insufficient.

17        As an initial matter, the court looks to Social Security Ruling ("SSR") 16-3p

18   for guidance on evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and

19   superseded SSR 96-7p and applies to decisions made on or after March 28, 2016.

20   SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not

21   have the same force and effect as statutes or regulations, they are binding on all

22   components of the Social Security Administration."  *Id.* (citing 20 C.F.R.

23   § 402.35(b)(1)).

24        In adopting SSR 16-3p, the Social Security Administration sought to "clarify

25   that subjective symptom evaluation is not an examination of an individual's

26   character."  *Id.* at *2.

27        [SSR 16-3p] makes clear what our precedent already required: that

28

21

1   assessments of an individual's testimony by an ALJ are designed to

2   evaluate the intensity and persistence of symptoms after the ALJ finds

3   that the individual has a medically determinable impairment(s) that

4   could reasonably be expected to produce those symptoms, and not to

5   delve into wide-ranging scrutiny of the claimant's character and

6   apparent truthfulness.

7   *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (internal quotation

8   marks and alterations omitted).

9       To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

10  analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

11  *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

12  produced objective medical evidence of an underlying impairment that could

13  reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if the

14  claimant satisfies the first step, and there is no evidence of malingering, the ALJ

15  must evaluate the intensity and persistence of the claimant's symptoms and

16  determine the extent to which they limit her ability to perform work-related

17  activities.  *Id.*

18      In assessing intensity and persistence, the ALJ may consider: a claimant's

19  daily activities; the location, duration, frequency, and intensity of the symptoms;

20  precipitating and aggravating factors; the type, dosage, effectiveness, and side

21  effects of medication taken to alleviate the symptoms; other treatment received;

22  other measures used to relieve the symptoms; and other factors concerning the

23  claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing

24  20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at

25  1283-84 & n.8 (9th Cir. 1996)).  To reject the claimant's subjective symptom

26  statements at step two, the ALJ must provide "specific, clear, and convincing"

27  reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 921,

28

22

929.

At the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 34. At the second step, the ALJ discounted plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the medical evidence and other evidence in the record. *Id.* Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence.

The crux of the parties' dispute is about which reason or reasons the ALJ actually provided to discount plaintiff's testimony. The parties agree one of the reasons was the inconsistency between plaintiff's testimony and the objective medical record, and that the ALJ did not explicitly rely on any particular medical opinion as a reason. *See* P. Mem. at 2, 6; D. Mem. at 4-8. Plaintiff maintains that was the only reason the ALJ gave. Defendant claims the ALJ offered two additional reasons: that evidence showed plaintiff's impairments improved with treatment, and that plaintiff attempted to go back to a job that required medium exertional effort. *See* D. Mem. at 6-7.

The ALJ's discussion of plaintiff's symptom testimony begins with a summary of her and her counsel's statements. *See* AR at 33-34. The ALJ then explains that her symptom testimony is not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." AR at 34. The ALJ goes on to summarize the medical evidence that she interprets to show "many normal exam and mild clinical exam findings." *See* AR at 34-37. The court has already outlined that evidence above.

Although the ALJ could have been clearer, the court agrees with defendant that she discounted plaintiff's testimony in part due to evidence showing that her

1    impairments improved with treatment. *See* AR at 35-36. On the other hand, there

2    is no indication whatsoever the ALJ intended to discount plaintiff's testimony

3    based on her decision to go back to her job at Rite Aid. The ALJ mentioned that

4    fact only in passing in the section summarizing plaintiff's testimony. *See* AR at

5    34. There is no discussion showing the ALJ interpreted that fact in a negative

6    light. *See id.* Accordingly, the court will only consider whether the ALJ erred in

7    rejecting plaintiff's testimony based on (1) its consistency with the objective

8    medical record and (2) evidence of improvement with treatment.

9        First, the ALJ did more than simply include a boilerplate conclusion. *Cf.*

10   *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) (ALJ must do more than

11   include boilerplate statement that there are inconsistencies without identifying

12   *which* evidence contradicts *which* testimony); *Brown-Hunter v. Colvin*, 806 F.3d

13   487, 494 (9th Cir. 2015) (ALJ did not identify claimant testimony she found to be

14   contradicted). The ALJ properly identified the testimony she found to be not

15   credible (*see* AR at 33-34), and highlighted inconsistencies between that testimony

16   and the record (*see* AR at 34-37). ALJs are not required to "perform a line-by-line

17   exegesis of the claimant's testimony, nor do [the regulations] require ALJs to draft

18   dissertations when denying benefits." *Lambert*, 980 F.3d at 1277 (citation

19   omitted).

20       Plaintiff argues the ALJ did not adequately address several pieces of medical

21   evidence that support her testimony. *See* P. Mem. at 4. That is not accurate. In

22   considering the medical evidence, the ALJ also acknowledged findings that tended

23   to support plaintiff's symptom testimony concerning her back, neck, shoulder,

24   knee, and hand impairments. *See* AR at 34-37. Importantly, the ALJ addressed all

25   of the issues that plaintiff lists in her brief. *Compare* P. Mem. at 4 *with* AR at 34-

26   37. This is not a case where the ALJ simply cherry-picked isolated instances of

27   normal or improved symptoms, instead of considering the record as a whole. *See*

28

24

1    *Holohan*, 246 F.3d at 1207 ("[T]he ALJ selectively relied on some entries in

2    Holohan's records from San Francisco General Hospital and ignored the many

3    others that indicated continued, severe impairment.").

4         Second, the ALJ discounted plaintiff's testimony because of evidence

5    showing her impairments improved with treatment.  *See* AR at 35-36.  Specifically,

6    the ALJ noted that acupuncture decreased plaintiff's pain and numbness in her

7    hands.  *See* AR at 35 (citing AR at 484).  And the ALJ recognized that, following

8    her shoulder surgery in early 2015, plaintiff reported her neck and shoulder pain

9    improved.  *See id.* at 35-36 (citing AR at 376, 445).  There was also evidence from

10   early 2016 that medications helped control plaintiff's pain, bringing it down from

11   an eight out of ten to two to four out of ten, which allowed her to perform activities

12   of daily living.  *See* AR at 36 (citing AR at 425-26).  Thus, this was also a clear

13   and convincing reason, backed by substantial evidence, to reject plaintiff's

14   testimony.  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJs must consider effect of

15   medication and other treatment on pain or other symptoms); *Morales v. Astrue*, 300

16   Fed. Appx. 457, 459 (9th Cir. 2008) ("Medical improvement is a clear and

17   convincing reason for rejecting a claimant's testimony."); *Celaya v. Halter*, 332

18   F.3d 1177, 1181 (9th Cir. 2003) (ALJ's finding that symptoms were controlled was

19   clear and convincing reason to reject plaintiff's testimony).

20        To summarize, the ALJ provided two specific, clear, and convincing

21   reasons, supported by substantial evidence, to discount plaintiff's symptom

22   testimony.  Accordingly, the court finds no error in the ALJ's conclusion.

23   **C.    The ALJ Properly Concluded that Plaintiff's Past Relevant Work as a**

24   **Freezer Operator Was Not a Composite Job**

25        Plaintiff argues the ALJ should have found that plaintiff had a composite

26   job.  P. Mem. at 19.  Plaintiff contends that she was, in effect, performing both the

27   occupations of freezer operator and ice cream freezer assistant at the same time.

28

1   *See id.* at 20.  Because the vocational expert testified plaintiff was not capable of

2   performing the ice cream freezer assistant job, plaintiff argues the ALJ should have

3   concluded she could not perform her composite job.  *See id.* at 20-21.  Plaintiff also

4   argues the vocational expert did not provide a proper explanation or rationale for

5   her conclusion that plaintiff's job was not composite.  *See id.* at 20.

6         At step four, plaintiff had the burden to prove she could not perform her past

7   relevant work "either as actually performed or as generally performed in the

8   national economy."  *Carmickle*, 533 F.3d at 1166 (internal quotation marks

9   omitted).  In defining plaintiff's past relevant work, the ALJ must keep in mind

10   that "[e]very occupation consists of a myriad of tasks, each involving different

11   degrees of physical exertion."  *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir.

12   1985).  If a prior occupation has significant elements of two or more occupations, it

13   is classified as a "composite job" with no counterpart in the Dictionary of

14   Occupational Titles ("DOT").  *Jesus P. v. Berryhill*, 2019 WL 134552, at *3 (C.D.

15   Cal. Jan. 8, 2019) (citing SSA Program Operations Manual Sys. ("POMS") DI

16   25005.020(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last visited

17   Sept. 21, 2021)); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).  Whenever a

18   claimant's past relevant work is a composite job, the ALJ considers only whether

19   the claimant can still perform it as it was actually performed.  *Jesus P.*, 2019 WL

20   134552, at *3 (citations omitted).

21         In general, ALJs may not define past relevant work according to its least

22   demanding function.  *Valencia*, 751 F.2d at 1086.  But this rule does not apply

23   where "(1) the 'least demanding function' is a task that the claimant actually

24   performed most of the time; and (2) the DOT defines the claimant's past job as

25   requiring only that least demanding function."  *Stacy v. Colvin*, 825 F.3d 563, 570

26   (9th Cir. 2016) (ALJ properly classified past work as "supervisor" where

27   supervisory duties accounted for 70 to 75 percent of the job).

28

1    Plaintiff testified that she worked as a freezer operator at Humboldt
2    Creamery until 2009.  AR at 76-77.  Her job included setting up an ice cream
3    machine, bringing ingredients and popsicle sticks to the machine, loading
4    ingredients and materials into the machine, and running it to make ice cream
5    products.  *See* AR at 77, 94.  She testified the job involved lifting up to 50 or 55
6    pounds.  AR at 77-78, 94.

7    The vocational expert testified that plaintiff's work as a freezer operator was
8    light pursuant to the DOT but medium as performed by plaintiff.  *See* AR at 89.
9    The expert concluded that, based on the ALJ's hypothetical question regarding
10   someone with plaintiff's RFC, plaintiff could still perform the freezer operator job
11   as generally performed in the national economy but not as actually performed.  *See*
12   AR at 90-92.

13   Plaintiff's counsel asked the vocational expert whether plaintiff's freezer
14   operator job should be classified as a composite job based on the totality of the
15   duties it required as actually performed.  AR at 95.  After questioning plaintiff
16   further, the expert concluded that it was not a composite job because any duties
17   that required getting and returning supplies would not be performed all day.  *See*
18   AR at 95-96.

19   Based on the vocational expert's testimony, the ALJ concluded plaintiff
20   could engage in her past relevant work as a freezer operator as generally
21   performed.  AR at 39-40.  The ALJ agreed that the position was not a composite
22   job because plaintiff's duties to shuttle ingredients and clean up were only
23   incidental to the main job of freezer operator.  *See* AR at 40.

24   The court finds the ALJ did not err in concluding that plaintiff's past
25   relevant work as a freezer operator was not a composite job.  Plaintiff failed to
26   present any evidence tending to show that the task of shuttling ingredients was a
27   significant part of her job.  *See Hurtado v. Berryhill*, 2017 WL 2056165, at *4

28

1  (C.D. Cal. May 12, 2017) (plaintiff has the burden to show that her prior job had

2  significant elements of two or more occupations).  Instead, when asked for more

3  details about the duties of the freezer operator job, plaintiff testified that getting

4  ingredients was only part of the "setup" for the main task of making the ice cream.

5  AR at 96.  In other words, the fact that plaintiff had to engage in medium-level

6  work occasionally did not alter the fundamental nature of her work that involved

7  the less-demanding task of running an ice cream machine.  *See Stacy*, 825 F.3d at

8  570 ("This case is . . . distinguishable from *Carmickle*, *Valencia*, and *Vertigan*,

9  where the claimants performed less-demanding tasks only occasionally."); SSR 82-

10  61, 1982 WL 31387, at *2 ("[I]f the claimant cannot perform the excessive

11  functional demands and/or job duties actually required in the former job but can

12  perform the functional demands and job duties as generally required by employers

13  throughout the economy, the claimant should be found to be 'not disabled.'").

14  Therefore, the ALJ did not err in concluding that plaintiff did not have a composite

15  job.

## V.

## CONCLUSION

18          IT IS THEREFORE ORDERED that Judgment shall be entered

19  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

20  this action with prejudice.

23  DATED: September 30, 2021

SHERI PYM
United States Magistrate Judge